**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **EDWARD LIONEL BLAKE, #79357-079,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **3:07-CV-1001-M** |
| | § | |
| **D. BERKEBILE, et al.,** | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the District Court in implementation thereof, this case has been referred to the United States Magistrate Judge for pre-trial management.  The findings, conclusions and recommendation of the Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS:

Type of Case: This is a *pro se* civil rights action brought by a federal inmate pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971). Following initial screening, the court dismissed this case in part and issued process in part.

Parties:  Plaintiff Edward Lionel Blake ("Blake") is currently confined at USP Beaumont in Beaumont, Texas.  The events at issue in this case occurred while he was confined at FCI Seagoville in Seagoville, Texas.

The five defendants remaining in the case are FCI Seagoville employees:  Unit Manager Soft Ruder, Case Manger T. Rhodes, Counselor Joe Baker, Counselor Lisa Jordan, and Case Manager Martinez.

1

Statement of Facts:  In his remaining three claims, Blake alleged Defendants Ruder,

Rhodes, Martinez, Jordan and Baker failed to protect him from two gang-related assaults -- on

May 23, 2006 at the hands of inmate Horace Grant, and on January 4, 2007 at the hands of

inmate Johnny Colon (an alleged follower of Grant).  Blake further alleged that Rhodes

retaliated against him by finding him guilty of a disciplinary violation on December 5, 2006.  He

sought monetary damages.

In summary, Plaintiff's complaint, answers to the questionnaire, and supplemental

pleadings alleged as follows:

In March 2005, following his arrival at FCI Seagoville, Blake began to experience

harassment and threats of violence from gang members, including the leader Horace Grant, of

which he complained to his unit team members.  Blake also began the process of requesting a

transfer to FCI Beaumont-Low.  In the meanwhile, on May 23, 2006, Blake was involved in an

incident with inmate Grant, who allegedly assaulted Plaintiff with a sharp-edged prison

instrument.  Although Grant and Plaintiff were escorted to the Special Housing Unit (SHU)

pending an investigation, Blake alleged he was persuaded to drop the charges against his

assailant and they both were released back to the general population.

According to Blake, gang harassment resumed during the next few months, and he

continued to fear for his safety.  In September 2006, Blake allegedly sought assistance with his

transfer request claiming his Unit Team (which included some of the Defendants remaining in

this case) had misled him.  Following a self-diagnosed mental breakdown on November 28,

2006, Blake claimed that he had requested the Psychology Department to re-evaluate his

condition and that Dr. Stinson in turn recommended his placement in protective custody.  Upon

2

discovering him in SHU, Blake alleged his Unit Team forced him out of SHU by writing him up for an incident report, of which they found him guilty.  On December 11, 2006, Plaintiff submitted a BP-9, complaining of his removal from the SHU and informing prison officials of his continued fears for his safety.  Thereafter, on January 4, 2007, inmate Colon allegedly assaulted Blake with a steel pipe, inflicting a severe head injury for which Plaintiff was rushed to the emergency room.  Although Blake was found guilty of fighting with Colon, he claimed the evidence established Colon as the sole aggressor.

On July 10, 2009, Defendants filed a motion for summary judgment asserting the defense of qualified immunity (Doc. #54).  Blake objected.  On February 16, 2010, after the court granted in part and denied in part his motion to compel discovery, Blake filed a supplemental response and affidavit in support (Doc. #76 and #77).[3]

The court summarizes the undisputed facts as follows:

1.      In March 2005, Plaintiff arrived at FCI Seagoville.  (Defs.' App. at 3.)

2.      On February 28, 2006, Blake requested a transfer to FCI Beaumont-Low, the lowest
        security level facility in Beaumont, Texas, to participate in a vocational training program.
         Defendant Ruder denied the request the same day without prejudice to it being
        resubmitted after Blake had completed the required 18-month stay at FCI Seagoville with

_____

[3]      In his supplemental response to the motion for summary judgment, Blake contends Defendants failed to provide discovery with respect to three issues: (1) threats made by other inmates against Blake on or about December 5, 2006; (2) investigations or sanctions imposed against the Defendants for failing to protect inmates from threats or assaults by other inmates; and (3) disciplinary actions taken against any inmate who threatened or assaulted Blake. (Pl.'s Suppl. Resp. at 1-2).  In their Objections and Responses to Plaintiff's First Requests for Documents mailed to Plaintiff on January 8, 2010, Defendants advised the court that no documents are available with respect to the first two requests, and that they have provided all relevant documents with respect to Colon's disciplinary action stemming from the January 4, 2007 incident.

clear conduct.  (Defs.' App. at 3.)[4]

3.      On May 23, 2006, Blake was involved in an incident with inmate Grant.  Both inmates were placed in "administrative detention pending investigation for possible fight."  (Pl's Suppl. Resp. at Ex. C.)

4.      On September 2, 2006, Blake sought assistance with his request for transfer to FCI Beumont-Low, having met the 18-month pre-requisite stay.  (*See* Attachments to Pl's Response to Questionnaire Doc. # 9.)

5.      In September 2006, Defendants Rhodes and Ruder formally submitted a request on Blake's behalf for a transfer to FCI Beaumont-Low, a lower security assignment, so that Blake could be closer to his family in the Houston area and participate in vocational training.  (Defs.' App. at 5-6.)

6.      On November 27, 2006, Blake learned that his transfer request had been denied because he was within 500 miles of his release residence.  (Defs.' App. at 7.)

7.      On November 28, 2006, Blake requested to be placed in SHU for his protection.  (Defs.' App. at 7.)

8.      During a November 30, 2006 investigation into Blake's request for protective custody, Rhodes could not verify any of the alleged threats to Blake's safety.  Blake informed Rhodes of the May 23, 2006 incident when Grant chased him with a sharpened object. Rhodes concluded that, although both inmates were placed in SHU, it was later determined that there was no threat and both inmates were released to general population. Blake reported having no further contact with Grant.  He claimed, however, that Grant's friends continued to harass him verbally, and "that their behavior . . . made it impossible for him to remain in general population . . . ."  Blake explained that he did not request protective custody sooner because he was waiting to be transferred to FCI Beaumont Low.  (Defs.' App. at 7.)

9.      Since Blake learned of the denial of his transfer request on November 27, 2006, the day before his request for protective custody, Rhodes concluded that Blake was "attempting to manipulate the system to effect a transfer closer to his home in Houston, Texas." (Defs.' App. at 7.)

10.    Shortly after the issuance of Rhodes' November 30, 2006 memorandum, Officer Shannon ordered Blake to return to general population.  Plaintiff refused to leave the SHU "due to

---

[4]      The Beaumont Federal Correction Complex consists of three facilities: FCI Beaumont Low (the facility to which Plaintiff sought a transfer), FCI Beaumont Medium, and USP Beaumont (the high security facility to which Plaintiff is presently assigned).

concerns for his safety," and Shannon charged Blake with a disciplinary violation. During an investigation later that day, Blake stated: "I refuse, for my safety. Just a bunch of old bull from a long time ago." On December 5, 2006, the Unit Disciplinary Committee (UDC), which included Defendants Rhodes and Jordan, found Blake guilty of the infraction and imposed punishment (loss of privileges for ninety days). (Defs.' App. at 8-10.)

11.     On December 11, 2006, Plaintiff submitted a BP-9 ("Request for Administrative Remedy") informing staff of his fears for his safety and requesting protective custody. He accused the Unit Team of overriding the decision of the Psychology Department. Blake reiterated that Grant's followers continued to pressure and provoke him, and to harass him verbally, accusing him of being a snitch. Blake feared that he would "have to do something radical" if he did not "want to be totally degraded." (Pl.'s Suppl. Resp. at Ex. F.)

12.     On January 4, 2007, Blake was accused of fighting with Colon, and was placed in SHU pending an investigation. (Defs.' App. at 11 and Pl.'s Suppl. Resp. at Ex. H and I.)

13.     On January 10, 2007, Warden Berkebile denied Blake's December 11, 2006 Request for Administrative Remedy, concluding the Psychology Department had not ordered his placement in SHU. (Pl.'s Suppl. Resp. at Ex. J.)

14.     On February 12, 2007, Disciplinary Hearing Officer (DHO) Mancha found Blake guilty of fighting with Colon and imposed punishment. (Defs.' App. at 11-12.)

        Findings and Conclusions:  For the reasons set out below, Defendants' motion for

summary judgment should be granted.

I.

        To prevail on a motion for summary judgment, the moving party has the initial burden of

showing that there is no genuine issue of any material fact and that judgment should be entered

as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct.

2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S. Ct. 2505,

2509-10 (1986). Once the moving party has made an initial showing, the party opposing the

motion for summary judgment may not merely rely on his pleadings, but must come forward

with competent evidentiary materials that establish a genuine fact issue. *Anderson,* 477 U.S. at

256-257, 106 S. Ct. at 2514; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-87, 106 S. Ct. 1348, 1355-56 (1986).

The doctrine of qualified immunity, shields officials from suit "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *McClendon v. City of Columbia,* 305 F.3d 314, 322 (5th Cir. 2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)).  To determine whether an official is entitled to qualified immunity from a suit alleging a constitutional violation, the court conducts a familiar two-step inquiry:  First the court determines whether plaintiff's allegations allege facts to establish that the official violated the plaintiff's constitutional rights; second, the court must decided if the right at issue was "clearly established" at the time of defendant's alleged misconduct.  *Hope v. Pelzer,* 536 U.S. 730, 736, 122 S. Ct. 2508, 2513 (2002); *see McClendon,* 305 F.3d at 323.  Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of circumstances in the particular case at hand." *Pearson v. Callahan*, ___ U.S. ___, 129 S.Ct. 808, 818 (2009), receding from *Saucier v. Katz*, 533 U.S, 194, 121 S. Ct. 2151 (2001).

## II.

Plaintiff alleges Defendants twice failed to protect him from gang related assaults, on May 23, 2006, and on January 4, 2007.[5]

---

[5]     Although Defendants' motion for summary judgment mentions both incidents and provides evidence with respect to both events, it appears to include arguments only in support of the May 23, 2006 incident.  (*See* Defs.' Mot. Summ. J. at 7.)  Regardless, viewing the summary judgment evidence in the light most favorable to the Plaintiff, the court proceeds to address all remaining claims in this case.

"[P]rison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." *Longoria v. State of Texas*, 473 F.3d 586, 592-93 (5th Cir. 2006) (citing *Farmer v. Brennan,* 511 U.S. 825, 832-33, 114 S.Ct. 1970, 1976-77 (1994)). However, not every injury "by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. Under *Farmer,* an inmate "must show that he [was] incarcerated under conditions posing a substantial risk of serious harm" and that Defendants were deliberately indifferent to his need for protection. *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977. An official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate ... safety" and disregards that risk. *Id.* at 837, 114 S.Ct. at 1979. In this context, an officer's awareness of the risk is evaluated subjectively. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and must in fact also have drawn the inference. *Id.*

The May 23, 2006 incident does not amount to a failure to protect in violation of Blake's constitutional rights. Liberally viewing the summary judgment evidence in the light most favorable to Blake the record contains no evidence upon which a reasonable trier of fact could find that Defendants had the requisite knowledge that a substantial risk of serious harm existed prior to the May 23, 2006 incident. Even assuming the allegations in the complaint are true, Blake has failed to demonstrate that the defendants acted with deliberate indifference. Blake did not voice any complaint to the Defendants regarding any possible threat or risk of harm prior to the May assault. As a matter of fact, Plaintiff did not mention the May 23, 2006 assault until November 30, 2006, when Rhodes interviewed him in connection with his request (submitted

only two days earlier) to be placed in the SHU for his own protection.  (T. Rhodes' Aff., Def's

Appx. at 7.)  Following an investigation, Rhodes concluded Blake's alleged fears for his safety

were unsupported, and that Blake was attempting to manipulate the system to secure a transfer to

FCI Beaumont Low.  (*Id.*)

In his supplemental response, Plaintiff asserts that during his first program review, on

September 30, 2005, he told Defendants Baker, Martinez, and Ruder that he "feared for [his]

safety in the institution because a gang shot-caller, inmate Horace Grant and company[,] ha[d]

been harassing [him] to provide them with weekly spending money and ha[d] been threatening to

do something to [him] if [he] refuse to provide them with weekly spending money."  (Pl's Aff. at

1.)  In support, Plaintiff submits a copy of the September 30, 2005 Program Review Report,

which noted only that Blake was "concerned about security pts."  (Pl's Suppl. Resp. at Exh. A.)

The Program Review Report mentioned neither harassment nor a threat from Grant or his

followers.

Apart from the above conclusory statement, Blake provides no additional evidence that

Defendants were aware of a any risk to his safety *prior* to the May 23, 2006 assault.  Thus, he

cannot raise a genuine issue of material fact that Defendants were aware of *any possible* facts

from which they could have inferred that Plaintiff was at risk of harm.  Accordingly, Defendants

Ruder, Rhodes, Martinez, Jordan, and Baker are entitled to judgment as a matter of law on the

basis of qualified immunity.

The court reaches the same conclusion with respect to the second failure to protect claim,

which stemmed from the January 4, 2007 altercation with inmate Colon.  Blake has presented no

evidence to establish that any of the Defendants knew that Colon or any of Grant's followers

8

might present a specific threat of harm to him before the January 4, 2007 incident.

In response to the motion for summary judgment, Blake contends the Defendants were well aware of his fears for his safety, and that he might have to get into a fight if he did not want to be totally degraded. He relies on his November 28, 2006 admission to the SHU, and his December 11, 2006 Administrative Remedy Request. (Pl's Supp. Response at Ex. F.) On both occasions, however, he related nothing more than generalized fears against unspecified followers of inmate Grant. (*Id.* at second page of Adm. Remedy Request.) At no time did Blake refer to a specific harassing remark or threat by date, time, and place, or identify the name of the inmate who made the harassing remark or threat. "A prisoner's general claim that he was threatened, [that] he reported the threat to prison officers without providing them sufficient details to act on, and that he was later assaulted, is not sufficient to proceed to trial on a failure to protect claim." *See Smith v. Jaramillo*, 2006 WL 1984345, *3 (W.D. Tex. 2006) (citing *Robinson v. Cavanaugh*, 20 F.3d 892, 894 (8th Cir. 1994) (affirming summary judgment on failure to protect claim where evidence showed plaintiff failed to advise guard of potential assailant's identity); *Matzker v. Herr*, 748 F.2d 1142, 1150 (7th Cir. 1984) ("[t]he prisoner must identify who is threatening him to allow the corrections officers a reasonable opportunity to protect the threatened prisoner from harm")).

Blake also contends that Colon brutally attacked him on January 4, 2007, inflicting a serious head injury. This assertion is unsupported and patently frivolous. The summary judgment evidence clearly reflects that Colon was not the sole assailant during the January 4, 2007 incident. The incident report establishes that Blake and Colon began fighting following an exchange of remarks, and that Colon was not the sole reason for the attack. (Pl's Feb. 16, 2010

9

Aff. at 5.)  Colon ultimately hit Blake with a metal broom handle, and Blake fought back striking

Colon with a tape dispenser.  Both inmates sustained injuries and were found guilty of fighting.

While Blake was transported to the emergency room for a CT-scan, he suffered nothing more

than a "laceration [of the] forehead," which required no sutures.

Viewing the summary judgment evidence in the light most favorable to Blake, the record

contains no evidence upon which a reasonable trier of fact could find that Defendants had the

requisite knowledge that a substantial risk of serious harm existed prior to the January 4,, 2007

incident with inmate Colon.  Accordingly, Defendants Ruder, Rhodes, Martinez, Jordan, and

Baker are entitled to judgment as a matter of law on the basis of qualified immunity.

III.

Next the court addresses Plaintiff's claim of retaliation against Defendant Rhodes.

To state a valid claim for retaliation an inmate "must allege (1) a specific constitutional

right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that

right, (3) a retaliatory adverse act, and (4) causation."  *Hart v. Hairston*, 343 F.3d 762, 764 (5th

Cir. 2003); *see also McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998); *Tighe v. Wall*, 100

F.3d 41, 42 (5th Cir. 1996).  The plaintiff must establish that "but for the retaliatory motive the

complained of incident . . . would not have occurred."  *Woods v. Smith,* 60 F.3d 1161, 1166 (5th

Cir. 1995).  "Mere conclusory allegations of retaliation will not withstand a summary judgment

challenge.  The inmate must produce direct evidence of motivation or, the more probable

scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Id.*

(internal quotation omitted).

Blake complains of retaliatory action allegedly taken by Defendant Rhodes in connection

with his December 5, 2006 disciplinary hearing.  Specifically, Blake alleges that Rhodes found

him guilty of the disciplinary violation (refusing to obey an order to leave the SHU) solely

because he had sought the assistance of Dr. Stinson, a staff psychologist at FCI Seagoville.

(Answer to Second Suppl. Question 4(A).)  According to Blake, on November 28, 2006, Dr.

Stinson ordered that he be placed in protective custody because of his safety concerns, and

prescribed medication for his mental condition. (*Id*.)

 Even assuming the violation of a constitutional right, Blake cannot show direct evidence

of retaliation by Defendant Rhodes or a chronology of events from which retaliation may

plausibly be inferred.  The undisputed summary judgment evidence establishes that Rhodes,

along with the other members of the Unit Team, found Blake guilty of the November 30,

disciplinary because he refused to obey the order to the leave the SHU.  During the investigation

as well as during the UDC meeting, Blake conceded refusing to leave the SHU as ordered by

staff.  Although Blake complained that he feared for his safety, his allegations were unsupported

and conclusory at best.  As noted in Rhodes' Memorandum of November 30, 2006, issued the

same day of the disciplinary, Blake waited over six months after the May 23, 2006 incident to

request protective custody, and ultimately did so only after he learned of the denial of his request

for transfer.  In light of this, Rhodes concluded that Blake's alleged fears for his safety were

nothing more than an attempt to manipulate the system to effect his transfer to FCI Beaumont-

Low.  (Def's Appx. at 7.)  Moreover, contrary to Blake's assertion, the Psychology Department

had not ordered his placement in SHU.  (Pl's Suppl Resp. at Exh. J.)

 Rhodes and the UDC properly found Blake guilty of disobeying an order and imposed

punishment.  Blake has not controverted Rhodes' account.  Nor has he shown that "but for the

retaliatory motive" he would not have been found guilty of the disciplinary. *See Woods*, 60 F.3d

at 1166.  Accordingly, Blake cannot raise a genuine issue of material fact with respect to his

retaliation claim, and Defendant Rhodes is entitled to judgment as a matter of law on the basis of

qualified immunity.

RECOMMENDATION:

     For the foregoing reasons, it is recommended that Defendants' motion for summary

judgment (Doc. # 54) be GRANTED, and that judgment be entered as a matter of law as to

Defendants Sol Ruder, Terry Rhodes, Marcos Martinez, Lisa Jordan, and Joe Baker.

     Signed this 2nd day of March, 2010.


                            _____
                            WM. F. SANDERSON, JR.
                            UNITED STATES MAGISTRATE JUDGE


NOTICE

     A copy of this report and recommendation shall be served on all parties in the manner
provided by law.  Any party who objects to any part of this report and recommendation must file
specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. §
636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific
finding or recommendation to which objection is made, state the basis for the objection, and
specify the place in the magistrate judge's report and recommendation where the disputed
determination is found.  An objection that merely incorporates by reference or refers to the
briefing before the magistrate judge is not specific.  Failure to file specific written objections will
bar the aggrieved party from appealing the factual findings and legal conclusions of the
magistrate judge that are accepted or adopted by the district court, except upon grounds of plain
error.